# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Elaine E. Bucklo | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 98 C 5563 | **DATE** | 1/24/2001 |
| **CASE TITLE** | Miller vs. McCalla, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Plaintiff's renewed motion for class certification is granted. Plaintiff's motion for summary judgment is also granted against the McCalla Firm and the court awards the maximum statutory damages the law will allow. Plaintiff's motion for summary judgment against the Echevarria firm is granted. Defendant, Echevarria Firm's cross motion for summary judgment is denied. Enter Memorandum Opinion and Order. Discovery is ordered closed on 7/31/01. Pretrial order to be filed 8/31/01. Response to any motions in limine due by 9/14/01. Pretrial conference set for 10/5/01 at 4:00 p.m. Trial set for 10/22/01 at 9:30 a.m.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 number of notices | Document Number |
|---|---|---|---|---|
| | No notices required. | | | |
| ✓ | Notices mailed by judge's staff. | | JAN 25 2001 date docketed | 112 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | C.S. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | 01 JAN 24 PM 6:05 | 1/24/01 date mailed notice | |
| MPJ courtroom deputy's initials | | Date/time received in central Clerk's Office | mailing deputy initials | |

DOCKETED
JAN 2 5 2001

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

KEVIN MILLER, )
)
    Plaintiff, )
)
v. ) No. 98 C 5563
)
)
MCCALLA, RAYMER, PADRICK, COBB, )
NICHOLS & CLARK, L.L.C; and )
ECHEVARRIA MCCALLA RAYMER, )
BARRETT & FRAPPIER, a Florida )
general partnership, )
)
    Defendants. )

## MEMORANDUM OPINION AND ORDER

Kevin Miller bought a house in Georgia in 1992, and took out a mortgage. He rented the house when he moved to Chicago, Illinois, in 1995. In 1997, he received a dunning letter from the Florida law firm of McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C, (the "McCalla firm"), which is itself a partner in Echevarria, McCalla, Raymer, Barrett & Frappier (the "Echevarria firm"). He sued, alleging that that the letter violated section 1692g(a)(1) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA"), by failing to state, as required, "the amount of the debt." FDCPA protects only consumer borrowers. I granted summary judgment for the defendants on the grounds that at the time the lawsuit was filed, Miller was making business use of the property. The Seventh Circuit reversed me, holding that what matters is the

use that Miller was making of the property at the time that the obligation to repay arose, which was a consumer use. *Miller v. McCalla*, 214 F.3d 872, 874 (7th Cir. 2000). Miller now moves for class certification on behalf of 9,000 persons similarly situated, and for summary judgment. The defendants oppose the motion for class certification, and also move for summary judgment. I grant Miller's motion and deny the defendants' motions.

I.

Miller asks me to certify the class of all persons who received, on or after September 5, 1997, form collection letters that included the statement that the debt McCalla was attempting to collect did not include various other charges, in connection with attempts to collect on non-business loans. A class action "may only be certified if [I am] satisfied after rigorous analysis, that the prerequisites of Rule 23(a) have been satisfied." *General Tel. Co. v. Falcon*, 457 U.S. 147, 161 (1982). A validly certified class must meet all four of Rule 23(a)'s prerequisites: numerosity, commonality, typicality, and adequacy of representation. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 613 (1997); Fed. R. Civ. P. 23(a). In addition, I must determine whether Miller meets one of the requirements of Rule 23(b); here, that rule requires that common questions of law and fact predominate over questions involving individual members, and that a class action is superior to other forms of adjudication. *Williams v. Chartwell Financial*

*Services, Ltd.*, 204 F.3d 748, 760 (7th Cir. 2000); Rule 23(b)(3). The party seeking class certification assumes the burden of demonstrating that certification is appropriate. *Retired Chicago Police Ass'n v. City of Chicago*, 7 F.3d 584, 596 (7th Cir. 1993). Generally, I should "seriously consider certifying a class or deny certification prior to any ruling on the merits, as the language of Rule 23 itself suggests," *Mira v. Nuclear Measurements Corp.*, 107 F.3d 466, 474 (7th Cir. 1997), and I do so here.

I begin with the Rule 23(a) questions. The class has about 9,000 members, clearly satisfying the numerosity requirement. The defendants do not dispute the adequacy of Miller's representation or that there are common questions of law or fact, but they do claim Miller's claim is not "typical." Because Miller's claim arose here in Illinois, they say, it is to be decided under Seventh Circuit law. However, the claims of the rest of the putative class members arose in Georgia, where they received the offending notice. Therefore "their claims should be decided on the basis of Eleventh Circuit case law," which may provide (unspecified) defenses not available in the Seventh Circuit. The defendants cite *Speakers of Sport, Inc. v. ProServ, Inc.*, 178 F.3d 862 (7th Cir. 1999), standing for the proposition that I should apply the law of the jurisdiction where the tortious act occurred--there, the sending of

the offending letter.[1]

Now, *Speakers of Sport* is a diversity case; but this is a pure federal question case. Choice of law provisions governing which state's law to invoke do not, therefore, apply here. No state's law applies. Federal law, in particular, FDCPA, applies. I am of course bound by the Seventh Circuit in interpreting FDCPA. Moreover, it would not defeat typicality to say that, in the law of a foreign jurisdiction that I might, hypothetically, have to invoke, there might be unspecified defenses that did not apply to the named plaintiff's claims under the local jurisdiction's law. It would be necessary to say what they were and why the differences mattered. Therefore the typicality argument fails. Rule 23(a) is satisfied.

The defendants hang their hat on their Rule 23(b)(3) objections. They argue, first, that the "nature of the subject debts is an individual question of fact not common to the proposed classes," and so it is not the case that common issues of law or fact predominate. The point seems to be that there would have to be some effort going into the determination of whether the loans of the absent class members were for consumer purposes, thus covered, or business purposes, thus not covered. However, the mortgage loan file will contain the requisite information, easily ascertained from a few standard forms. "Even if it is necessary to review the

---

[1] It is desirable to provide point cites for propositions relied upon.

contracts individually to eliminate business purchases, 'such a task would be neither herculean, inhibiting, nor for that matter . . . unique.'" *Haynes v. Logan Furniture Mart, Inc.*, 503 F.2d 1161, 1165 n.4 (7th Cir. 1974) (citations omitted). Moreover, the mere existence of factual variation will not defeat a class action; *Rosario v. Livaditis*, 963 F.2d 1013, 1017 (7th Cir. 1992). If the need to show whether each loan transaction was a consumer rather than a commercial one barred a class action, there could be no FDCPA class actions, because only consumer loans come under FDCPA. Therefore I find that individual questions will not predominate.

The defendants argue, second, that class certification should be denied because most of the class lives in Georgia, and he is the only known member who lives in Illinois. The defendants cite *Community Federal Savings v. Reynolds,* No. 87 C 4948, 1989 WL 39798 (N.D. Ill. Apr. 20, 1989) (unpublished order) (Holderman, J.), where the court declined to certify a Truth in Lending Act action where all but one of the potential class members reside outside Illinois. *Id.* at *3 (noting that foreign witnesses would not find [Illinois] a convenient forum). However, the issue raised here by this concern is the proper forum, not whether the class should be certified. Ordinarily, the convenience of the witnesses is not a factor in the Rule 26 determination. If the case should be tried in Georgia, it can be transferred there as a certified class action, if it otherwise meets the Rule 26 requirements--assuming that

-5-

cannot be resolved on summary judgment, and so need not be tried at all.

The defendants argue, finally, that Miller has not shown that recovery would be more than de minimus. However, if class actions can be said to have a main point, it is to allow the aggregation of many small claims that would otherwise not be worth bringing, and thus to help deter lawless defendants from committing piecemeal highway robbery, a nickel here and a nickel there, that adds up to real money, but which would not be worth the while of an individual plaintiff to sue on. *See In the Matter of American Reserve Corp.*, 840 F.2d 487, 489 (7th Cir. 1988). In view of this, the Seventh Circuit has said that a de minumus recovery does not automatically bar a class action. *Mace v. Van Ru Credit Corp.*, 109 F.3d 338, 344 (7th Cir. 1997). Here, the damages requested are statutory, and could amount to as much as $1,000 for the named plaintiff, 15 U.S.C. § 1692k(a)(2)(A), and the lesser of $500,000 or 1 per cent of the net worth of the debt collector, *id.* at 1692k(a)(3), for the absent class members; and this is hardly de minimus, even if that mattered. Miller has satisfied the requirements of Rule 23, and I accordingly certify the class.

### III.

#### A.

I now turn to the merits. The McCalla firm is liable. The dunning letter in question said that the "unpaid principal balance"

of the loan was $178,844.65, but added that "this amount does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges. . . . You may call our office for complete reinstatement and payoff figures." The Seventh Circuit said that "the statement does not comply with the Act." *Miller*, 214 F.3d at 875. As the McCalla firm admits, this requires me to enter summary judgment on liability with respect to it, and leaves open only the question of the damages award.

The McCalla firm argues in a conclusory way that the damages award could not be substantial. This is incorrect. In determining a damages award, I am to consider:

> the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, the resources of the debt collector, the number of persons adversely affected, and the extent to which the debt collector's noncompliance was intentional.

15 U.S.C.§ 1692k(b)(2). The noncompliance here involved thousands of individual violations over several years: it was frequent and persistent. The nature of the noncompliance was blatant. It is impossible that anyone reading and understanding the plain language of the statute could have thought that a letter stating that the amount demanded "does not include accrued but unpaid interest, unpaid late charges, escrow advances or other charges . . . ." satisfied the § 1692g(a)(1) requirement to disclose "the amount of the debt." The resources of the debt collector are considerable. In its own Martindale Hubble listing, the McCalla firm describes

itself as the "premier mortgage banking firm in the state of Florida." Even making allowances for self-promotion, this is not a mom-and-pop business. There were around 9,000 persons adversely affected. And the McCalla firm does not dispute that its noncompliance was intentional. I award the maximum allowable statutory damages: $1,000 for Miller, and either a half million dollars or 1% of the McCalla firm's net worth, whichever is less, for the absent class members.

B.

The defendants then argue that the Echevarria firm cannot be held liable for the debts of the McCalla firm even though they are partners. Now it is a basic principle of partnership law that "partners, unlike corporations, do not enjoy limited liability. The liability of a partnership is imputed to the partners. *Miller*, 214 F.3d at 876. However, the defendants argue that a partner is liable only for the acts done within the scope of the partner's duties in the partnership or in furtherance of partnership business, and that they contend that the offending letter was not within the Echevarria firm's scope of business. They cite here Seventh Circuit, Northern District of Illinois, and Illinois state case law and statutes, but only the Florida statutes control, since they are what governs the relationship between the partners.

The Florida statutes says that (1) "all partners are liable jointly and severally for all obligations of the partnership unless

otherwise agreed by a claimant or provided by law." Fla. Stat. Ann. § 620.8306; (2) "a partnership is liable for loss or . . . penalty incurred, as a result of a wrongful act. . . . of a partner acting in the ordinary course of business of the partnership or with authority of the partnership," *id.* at § 620.805; and, (3) "each partner is an agent of the partnership for the purpose of its business. An act of a partner . . . [who is] apparently carrying on in the ordinary course of partnership business or business of the kind carried on by the partnership, in the geographic area in which the partnership operates, binds the partnership." *Id.* at § 620.8301 The first section establishes the joint and several liability of partners for the obligations of the partnership, including the satisfaction of judgments. The second establishes the liability of the partnership for the wrongful acts of the partners done in either furtherance of ordinary partnership business or with the authority of the partnership. The third says that the authority of the partnership extends to acts apparently carrying out the ordinary course of partnership business if these are done in the geographic area in which the partnership operates.

The defendants argue that the sole purpose of the partnership, as defined by the terms of the agreement, is to practice law in Florida, and the Echevarria firm has nothing to do with the McCalla firms' foreclosure activities in Georgia or elsewhere. Their claim is that debt collection in Georgia is not in the ordinary course of

business of the practice of law in Florida. To hold Echevarria liable, they say, would be like holding liable for medical malpractice a partnership of physicians who had entered into a separate partnership for the purposes of a real estate venture.

This is a plausible argument, but it won't fly. The Supreme Court of Florida has treated debt collection by lawyers (or ex-lawyers) as the practice of law. *See Florida Bar v. Neckman*, 616 So.2d 31 (Fla. 1993) (unauthorized practice of law context); *Florida Bar v. Carmel*, 287 So.2d 305 (Fla. 1973) (same, specifically rejecting the argument that debt collection by a lawyer is not practice of law). Moreover, collection of debts in Georgia undertaken by a Florida firm from Florida is obviously practice of law in Florida: a Florida lawyer need not be admitted to the Georgia bar to send a dunning letter to a Georgia debtor, and a lawyer's sending such a letter is, according to the Florida Supreme Court, practice of law. Therefore, the McCalla firm's debt collection activities were in the ordinary course and geographical scope of the partnership business, and that firm was an agent of the partnership with the Echevarria firm, which is therefore bound by its acts and liable for its losses and penalties. Because, under Florida partnership law, general partners are jointly and severally liable for partnership obligations, the Echevarria firm is liable for the judgment against the McCalla firm.

IV.

The motion to certify the class is GRANTED. I GRANT Miller's motion for summary judgment against the McCalla firm, and award the maximum statutory damages the law will allow. I also GRANT Miller's summary judgment motion against the Echevarria firm, and DENY the Echevarria firm's cross motion for summary judgment.

ENTER ORDER:

*Elaine E. Bucklo*

**Elaine E. Bucklo**
United States District Judge

Dated: January 24, 2001

Copies have been mailed to:

Cathleen M. Combs
Edelman, Combs & Latturner
120 S. LaSalle Street, 18th Fl.
Chicago, IL 60603

Attorney for Plaintiff

Thomas L. Browne
Hinshaw & Culbertson
222 N. LaSalle Street, #300
Chicago, IL 60601-1081

Monica L. Thompson
Piper, Marbury, Rudnick & Wolfe
203 N. LaSalle Street, #1800
Chicago, IL 60601-1293

Attorneys for Defendants